UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**PENN-AMERICA INSURANCE COMPANY,**

        **Plaintiff,**

v.                                   **Civil No. 2:19cv57**

**WHITE PINES, INC.,**
**d/b/a L.A.'S NIGHT CLUB,**

    **and**

**BRYAN POLLI,**

        **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiff Penn-America Insurance Company's ("Penn-America") motion for judgment on the pleadings, ECF No. 37, and Defendant-Intervenor Bryan Polli's ("Polli") counter-motion for judgment on the pleadings, ECF No. 39. For the reasons stated below, Penn-America's motion is **GRANTED** and Polli's counter-motion is **DENIED**.

### I. FACTUAL HISTORY

L.A.'s Night Club ("L.A.'s"), located in Virginia Beach, Virginia, is owned and operated by Defendant White Pines Inc. ("White Pines"). ECF No. 25-1 ("Polli Complaint") ¶ 1. Polli began working for White Pines in 2009, and he was promoted to manager of L.A.'s in 2014 after having served in several roles. <u>Id.</u> ¶¶ 5-6. Polli "was never provided employment status" by

White Pines and "was not even provided a 1099 as an independent contractor[] until 2016," with his compensation instead coming from cash "under the table" either "from the business cash flow or out of the owner's pocket." Id. ¶¶ 8-9, 44.

Polli "observed an average of 3 or 4 incidents of violence a month" during the seven years he worked at L.A.'s, with police help being requested approximately once a month "after the incidents of violence escalated beyond the control of the security personnel on the premises." Id. ¶ 10. White Pines' "standing policy" was for "staff to only call the police in emergency situations, preferring that its employees handle dangerous situations without the benefit of law enforcement to avoid drawing negative attention to the strip club." Id. ¶ 11.

On March 22, 2016, Polli arrived at L.A.'s for his scheduled shift, and was there with four other employees when the club opened at 4:00 P.M., although security personnel were not scheduled until 8:00 P.M. Id. ¶¶ 12-14. Around 6:30 P.M., Polli was informed by an employee that two unknown customers ("Assailant One" and "Assailant Two" or "the Assailants") "were harassing the entertainers by attempting to solicit sex from them and calling them derogatory names." Id. ¶¶ 15-16.

The Assailants were "physically intimidating," but Polli asked them to leave "[a]s was expected by Whites Pines in his capacity as manager." Id. ¶¶ 19-20. Assailant One refused to

leave and responded that no one could "kick him out" because he was the "biggest person" there.  Id.  Polli called security personnel to come in early, but in the fifteen minutes before a security guard arrived, the Assailants "continued to threaten the staff and customers in L.A.'s."  Id. ¶¶ 21-22.  Polli asked the Assailants to leave twice more, including once with the added threat that he would call the police, but the Assailants refused.  Id. ¶¶ 23-25.  One of the Assailants then pushed the security guard who had just arrived early (as Polli had requested), causing a "very brief fight" before Assailant One was removed and Assailant Two left.  Id.  After the Assailants had left, the security guard told Polli that there was a retractable baton inside the front desk "to be used specifically for defense from violent customers."  Id. ¶ 27.

About three minutes later, "the Assailants ran in the front door, swinging their fists wildly," targeting two other employees.  Id. ¶ 28.  "Fearing serious injury" to the other employees, Polli grabbed the baton "and hit Assailant One in the back of the head, attempting to subdue him," but the blow only "further enrage[d] the Assailant," and caused the Assailant "to focus his wrath" on Polli.  Id. ¶ 29.  Assailant One "land[ed] full force punches on [Polli's] jaw and ribs" as Polli retreated into the club swinging the baton at Assailant One, before an employee was able to tackle Assailant One.  Id. ¶¶ 30-31.  After

3

the Assailants were restrained, the police arrived, but they "recommended against pressing charges due to injuries to both parties," although they did recommend securing a restraining order against the Assailants.  Id. ¶ 33.  Polli "informed the owner, Kenny Edwards, of the incident, and requested to leave early because he did not 'feel right.'"  Id. ¶ 34.

Polli had a cut on his jaw and red marks on his ribs as a result of the incident, and he "began coughing up blood the next morning and went straight to the hospital."  Id. ¶ 35.  Polli received an x-ray which showed that his lung had been imploded during the fight and his heart had shifted; he was told his injuries could have been fatal had he not sought medical attention.  Id. ¶¶ 36-37.  "Shortly after [] Polli was admitted to the hospital, [White Pines] told [] Polli that [White Pines] would 'help him out' with his medical bills and expenses while he was unable to work," but to Polli's knowledge, White Pines "did not pay any of [] Polli's medical bills" nor did it "provide any other financial assistance to Polli."  Id. ¶¶ 38-39.  Furthermore, White Pines "never reported the incident to the Workers['] Compensation Commission."  Id. ¶ 44.

## II. PROCEDURAL HISTORY

On March 22, 2018, Polli filed a lawsuit in the Circuit Court for the City of Virginia Beach alleging six counts against White Pines.  Id.  The first three counts allege that White

4

Pines was negligent: Count One for failure to schedule security guards; Count Two for failure to prevent the Assailants from re-entering White Pines; and Count Three for failure to call for police assistance.  Id. ¶¶ 45-63.  The fourth and fifth counts are fraud claims: Count Four for actual fraud for intentionally misrepresenting Polli's employment status as an independent contractor to defraud Polli from the protections of the Virginia Workers' Compensation Act; and Count Five for constructive fraud for doing the same either innocently or negligently.  Id. ¶¶ 64-73.  Count Six is a workers' compensation claim under the Virginia Workers' Compensation Act.  Id. ¶¶ 74-76.[1]

After Polli filed the Polli Complaint, White Pines and Polli both contacted Penn-America requesting coverage under a commercial general liability policy Penn-America issued to White Pines.  ECF No. 1-2 ("the Policy").  Penn-America denied both requests.  In response, Polli notified Penn-America of his intention to file a declaratory judgment action, but before he could, Penn-America filed a declaratory judgment action of its own against White Pines in this Court's Richmond Division, seeking a declaration that it has no duty to defend or indemnify White Pines.  White Pines never responded to Penn-America's

---

[1] A search of the Virginia Courts Case Information system revealed that Polli's Complaint is still an active case in the Virginia Beach Circuit Court.  The matter has been set for trial and continued two times.  The latest trial date was June 22, 2020, although there is no final disposition entered as of the date of this Opinion and Order's filing.

filing, and Penn-America secured an entry of default against White Pines.  ECF No. 8.[2]  Polli filed a motion to intervene, to transfer, and to set aside entry of default against White Pines, and the Richmond Division of this Court granted the motion to intervene and transferred the matter to this Court's Norfolk Division.  See Penn-America Insurance Company v. White Pines, Inc. d/b/a L.A.'s Night Club, No. 3:18CV650, 2019 WL 418859 (E.D. Va. Feb. 1, 2019).  This Court then denied the motion to set aside entry of default, stated that it would hold the entry of default against White Pines in abeyance, and issued an order exercising jurisdiction.  ECF Nos. 19, 24.

On January 7, 2020, Penn-America submitted the instant motion for judgment on the pleadings.  ECF No. 37.  The motion and its supporting memorandum ask the Court to declare that "Penn-America owes no duty to defend or indemnify White Pines on the claims asserted by [] Polli because there is either no coverage under the Policy, or coverage is excluded under multiple provisions of the Policy."  ECF No. 38 ("Penn-America Memo"), at 15.  On January 17, 2020, Polli submitted a counter-motion for judgment on the pleadings.  ECF No. 39.  The counter-motion and its supporting memorandum request that the Court declare that "Penn-America owes a duty to defend White Pines against the negligence claims asserted by [] Polli in his

---

[2] White Pines has never responded to any filing in this case.

underlying lawsuit." ECF No. 40 ("Polli Counter Memo"), at 11. Penn-America filed a response opposing Polli's counter-motion, to which Polli filed a reply brief. ECF Nos. 44, 45.

After having read and considered the filed briefs, the Court ordered the parties to submit supplemental briefing to address whether Polli's employment status as either an independent contractor or an employee would affect Penn-America's potential liability, and the extent to which either classification was appropriate. ECF No. 49. Both parties submitted their supplemental briefing. ECF Nos. 50 ("Polli Supp. Brief"), 51 ("Penn-America Supp. Brief"), 52 ("Polli Supp. Reply"). Now, having been fully briefed, Penn-America's motion for judgment on the pleadings and Polli's counter-motion for judgment on the pleadings are ripe for review.

### III. LEGAL STANDARD

#### A. Standard for 12(c) Motion

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is an appropriate mechanism for a party seeking declaratory judgment regarding a contractual dispute. See Paul v. Impact Office LLC, No. CV TDC-16-2686, 2017 WL 2462492, at *2 (D. Md. June 6, 2017) ("Such a motion can be used to obtain a declaratory judgment where the only dispute is the proper

interpretation of contractual terms." (citing A. S. Abell Co. v. Balt. Typographical Union No. 12, 338 F.2d 190, 193-95 (4th Cir. 1964))); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2020) ("The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court[,] . . . for example, in actions brought to obtain the construction of a will or litigation in which the sole question is the applicability or interpretation of a statutory provision."). "On a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached to those filings, as well as any documents that are integral to the complaint and authentic." Paul, 2017 WL 2462492, at *2-3 (citing Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013)) (internal quotations omitted).

When a motion for judgment on the pleadings is based on the underlying merits of the dispute, such as interpreting a contract's terms, the summary judgment standard is the appropriate standard to employ. See Paul, 2017 WL 2462492, at *2 ("In resolving a Rule 12(c) motion on the basis of the underlying merits, the court assumes the facts alleged by the nonmoving party to be true and draws all reasonable factual

8

inferences in its favor, and judgment is appropriate only if the moving party establishes that no genuine issue of material fact remains to be resolved and that the party is entitled to judgment as a matter of law."); see also Nationwide Mut. Fire Ins. Co. v. Facello, No. 5:13-CV-21730, 2014 WL 801051, at *2 (S.D.W. Va. Feb. 28, 2014) (applying the summary judgment standard for a 12(c) motion for a declaratory judgment in an insurance dispute (citing King v. Gemini Food Servs., Inc., 438 F. Supp. 964, 966 (E.D. Va. 1976))); Bell Atl.-Maryland, Inc. v. Prince George's Cty., 155 F. Supp. 2d 465, 473 (D. Md. 2001) (applying the summary judgment standard for a 12(c) motion determining whether a state statute was preempted (citing King, 438 F. Supp. at 966)). As the instant matter involves cross-motions seeking a Rule 12(c) declaratory judgment on the basis of the underlying merits, and as both parties posit that there are no genuine issues of material fact, the Court will apply the summary judgment standard. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1369 (3d ed. 2020) ("Indeed, the standard applied by the court appears to be identical under both [summary judgment and judgment on the pleadings] motions" because "[b]oth are concerned with the substance of the parties' claims and defenses and are directed towards a final judgment on the merits."). Therefore, "the court assumes the facts alleged by the nonmoving party to be

true and draws all reasonable factual inferences in its favor, and judgment is appropriate only if the moving party establishes that no genuine issue of material fact remains to be resolved and that the party is entitled to judgment as a matter of law." <u>Paul</u>, 2017 WL 2462492, at *2.[3]

## B. Interpreting the Policy's Terms

A federal court resolving a diversity action is, absent a controlling constitutional provision or act of Congress, obligated to apply the substantive law of the state in which it sits, including the state's choice-of-law rules. <u>See</u> <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78, (1938); <u>see also</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). Therefore, Virginia's substantive law, including its choice-of-law, applies to the resolution of this diversity-based declaratory judgment action. <u>See</u> <u>Erie</u>, 304 U.S. at 78. "Under Virginia law, questions concerning the validity, effect, and interpretation of a contract are resolved according to the principle of <u>lex loci</u>

---

[3] Both parties agree that summary judgment is the appropriate standard. <u>See</u> Penn-America Memo, at 4-5; Polli Counter Memo, at 3. Although there is Fourth Circuit caselaw applying the Rule 12(b)(6) standard to Rule 12(c) motions, such cases <u>evaluate 12(b)(6) defenses brought after an answer was filed, and therefore, the 12(c) motion was simply used as a vehicle to advance those defenses</u>, as Rule 12(h)(2) allows. <u>See</u> <u>Occupy Columbia</u>, 738 F.3d at 115-16; <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999); <u>see also</u> 5C Wright & Miller, Federal Practice and Procedure § 1367 ("The Rule 12(c) motion may be employed by the defendant as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings. . . . In that context, Rule 12(c) is merely serving as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it.").

*contractus*, the law of the state where the contract was made controls." Women In Military Serv. For Am. Mem'l Found., Inc. v. Hartford Fire Ins. Co., 21 F. App'x 186, 191 (4th Cir. 2001) (citing Woodson v. Celina Mut. Ins. Co., 211 Va. 423 (1970)). Further, pursuant to Virginia jurisprudence, an insurance policy is a contract to be construed in accordance with the principles applicable to all contracts. Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., 240 Va. 457, 459 (1990) (citing Hill v. State Farm Mut. Auto. Ins., 237 Va. 148, 152 (1989)).[4]

Under Virginia law, "it is a well-established principle, consistently applied in this Commonwealth, that only the allegations in the [underlying] complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." AES Corp. v. Steadfast Ins. Co., 283 Va. 609, 616-17 (2012); see also Town Crier, Inc. v. Hume, 721 F. Supp. 99, 102 n.12 (E.D. Va. 1989) ("[A]n insurer's duty to defend is determined solely by the allegations in the pleadings."). "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the

---

[4] "Under Virginia law, a contract is made when the last act necessary to complete the contract is performed, and, in the context of an insurance policy, the last act is the delivery of the policy to the insured." Women In Military Serv., 21 F. App'x at 191 (citing Buchanan v. Doe, 246 Va. 67, 70 (1993)). Polli has not alleged that the delivery of the Policy occurred in Virginia, however, both parties agree that Virginia contract law applies. See Penn-America Memo, at 3-4; Polli Counter Memo, at 3.

'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." AES Corp., 283 Va. at 617 (citing Copp v. Nationwide Mut. Ins. Co., 279 Va. 675, 682-83 (2010)).

"If an insurance policy is susceptible to two constructions, one of which would effectuate coverage and the other would not, it is to be construed liberally in favor of the insured and strictly against the insurer." Penn-America Ins. Co. v. Mapp, 461 F. Supp. 2d 442, 456 (E.D. Va. 2010) (citing Cent. Sur. & Ins. Corp. v. Elder, 204 Va. 192, 198 (1993)); see also Donnelly v. Transp. Ins. Co., 589 F.2d 761, 767 (4th Cir. 1978) ("If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense."). "[A]n insurer is excused from its duty to defend the insured only where the complaint against the insured clearly demonstrates no basis upon which the insurer could be required to indemnify the insured under the policy." Mapp, 461 F. Supp. 2d at 456 (citing Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 242 (4th Cir. 1995)); see also Travelers Indem. Co. v. Obenshain, 219 Va. 44, 46 (1978) ("The insurer is relieved of a duty to defend only when it clearly appears from the initial pleading the insurer would

12

not be liable under the policy for <u>any</u> judgment based upon the allegations."). "In addition, language in an insurance policy purporting to exclude coverage for certain events will be construed most strongly against the insurer." <u>Johnson v. Ins. Co. of N. Am.</u>, 232 Va. 340, 345 (1986) (citing <u>St. Paul Ins. v. Nusbaum & Co.</u>, 227 Va. 407, 411 (1984)). Therefore, "the burden is on the insurer to prove that an exclusion applies." <u>Id.</u> (citing <u>White v. State Farm</u>, 208 Va. 394, 396 (1967)).

## IV. DISCUSSION

As required by the "eight corners rule," <u>AES Corp.</u>, 283 Va. at 616-17, the Court will only consider the allegations in the Polli Complaint and the language of the Policy when making its determination as to whether Penn-America has a duty to defend and/or indemnify White Pines. The merits of both motions were independently reviewed, and because judgement is entered in favor of Penn-America, the facts discussed herein reflect facts and inferences made in favor of Polli.

### A. Policy Coverage: An "Occurrence" under the Policy

The relevant language from the Policy indicates that coverage only applies to "bodily injury" and "property damage" if "[t]he 'bodily injury' and 'property damage' is caused by an 'occurrence' that takes place in the "coverage territory[.]" The Policy, SECTION I, COVERAGE A – BODILY INJURY AND PROPERTY

13

DAMAGE LIABILITY ¶ 1.a-b.[5]  The Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., SECTION V – Definitions ¶ 13.

"'[O]ccurrence' and 'accident' are 'synonymous and . . . refer to an incident that was unexpected from the viewpoint of the insured.'" AES Corp., 283 Va. at 617 (quoting Utica Mut. Ins. Co. v. Travelers Indem. Co., 223 Va. 145, 147 (1982)).  The Supreme Court of Virginia has "held that an 'accident' is commonly understood to mean 'an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." Id. at 617-18 (quoting Lynchburg Foundry Co. v. Irvin, 178 Va. 265, 271 (1941)).  "An accidental injury is one that 'happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous.'" Id. at 618 (quoting Fidelity & Guar. Ins. Underwriters, Inc. v. Allied Realty Co., 238 Va. 458, 462 (1989)).

## 1. Damages from Intentional Battery

In seeking to further define the contours of an "occurrence," the Supreme Court of Virginia has "held that '[a]n intentional act is neither an "occurrence" nor an "accident" and

---

[5] Penn-America does not contest that Polli suffered "bodily injury" within the "coverage territory."

therefore is not covered by the standard [insurance] policy.'" Id. at 614, 618 (quoting Utica, 223 Va. at 147); see also Obenshain, 219 Va. at 46-47 (insurer had no duty to defend where complaint alleged only intentional torts performed by the insured); Lark v. Western Heritage Ins. Co., 64 F. Supp. 3d 802, 808-09 (W.D. Va. 2014) (insurer had no duty to defend where complaint alleged that the insured's employees intentionally assaulted the plaintiffs).   Penn-America, therefore, argues that because the "bodily injury" in this case arose from an intentional battery, the incident was neither an "occurrence" nor an "accident."   Penn-America Memo, at 7-8.   However, crucially, the Supreme Court of Virginia has stated that "[i]f a result is the natural or probable consequence of an insured's intentional act, it is not an accident."   AES Corp., 283 Va. at 617 (citing Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 637 (4th Cir. 2005)) (emphasis added).   The cases finding that an intentional act does not qualify as an "occurrence" or "accident" that Penn-America relies on all involved an intentional act performed by the insured.   Id.; Obenshain, 219 Va. at 46-47; Lark, 64 F. Supp. 3d at 808-09. Here, the intentional act was performed by a third-party, the Assailants, a distinction that undercuts Penn-America's assertion that the activity here cannot be an "occurrence" simply because it was the result of an intentional act.

Returning to the Supreme Court of Virginia's definition of "occurrence," the question that must be answered in this case is whether the battery committed by a third-party was expected <u>from the viewpoint of the insured</u>. AES Corp., 283 Va. at 617 (quoting <u>Utica</u>, 223 Va. at 147); see <u>Suffolk Lodging Partners, LLC v. Eastguard Ins. Co.</u>, No. 2:12CV546, 2013 WL 12131747, at *8 (E.D. Va. Aug. 23, 2013) (explaining that when determining whether an event is an "accident," a word "synonymous with 'occurrence,'" the "relevant standard is not whether the [victim's] injury was unexpected by [the assailant], but whether it 'was unexpected from the viewpoint of' [the insured]." (quoting <u>Utica</u>, 223 Va. at 147)). Polli's Complaint alleges that White Pines experienced "an average of 3 or 4 incidents of violence a month," including incidents of violence once a month that would escalate "beyond the control of the security personnel" and require police intervention. Polli Complaint ¶ 10. Despite this knowledge, "White Pines had a standing policy for its staff to only call the police in emergency situations, preferring that its employees handle dangerous situations without the benefit of law enforcement to avoid drawing negative attention to the strip club." <u>Id.</u> ¶ 11.

Assuming these allegations to be true, White Pines still could not have "expected" that Polli would have been severely battered by a patron. First, even though the attack Polli

16

suffered was "intentional" in the sense that the Assailants intended to reenter the premises to fight White Pines workers, that does not render it "expected" from White Pines' point of view; rather, the Assailants' attack happened "by chance," through the unexpected aggression of the violent Assailants. AES Corp., 283 Va. at 618 (emphasis added); see Suffolk Lodging Partners, 2013 WL 12131747, at *8 (finding the sexual assault of an employee to have been an "accident" where there was "no evidence that [the insured] expected this assault to occur"). Second, the facts alleged do not indicate that any worker at L.A.'s was ever previously injured in one of the referenced instances of violence. Third, the battery occurred during a time of day when security was not even scheduled to be present, further suggesting that violence was not anticipated in the normal course of the afternoon shift. Fourth, the facts indicate that White Pines expected its workers to contact the police when situations escalated "beyond the control of the security personnel," and while one could argue that injuries to security personnel may be expected during such an event, here the injured party was a manager, and not a security guard. Polli Complaint ¶ 10. Therefore, although there were prior instances of violence at L.A.'s, the alleged facts do not support a conclusion that a violent act against a manager, as was experienced by Polli, was "expected" for the purposes of the

17

instant legal analysis.  See Suffolk Lodging Partners, 2013 WL 12131747, at *8 ("Because [the insured] did not expect [the assailant] to assault [the victim], her injury constitutes an 'accident' within the meaning of the policy.").  As such, Penn-America has failed to "clearly demonstrate" that there is "no basis upon which" the incident at issue could qualify as an "occurrence" under the Policy.  Mapp, 461 F. Supp. 2d at 456.

## 2. Damages from Fraud

Considering next whether Penn-America has a duty to defend and/or indemnify White Pines to the extent the Polli Complaint alleges damages arising out of fraud, Penn-America broadly argues that it "owes no duty to defend or indemnify White Pines on the claims asserted by [] Polli because there is [] no coverage under the Policy." Penn-America Memo, at 15.[6]  A cause of action for actual fraud requires the plaintiff to prove, among other elements, that a false representation was "made intentionally and knowingly . . . ." Cohn v. Knowledge Connections, Inc., 266 Va. 362, 367 (2003) (emphasis added).  In support of this count, Polli argues that White Pines

---

[6] Penn-America puts forward no argument in its briefing specific to Polli's two fraud counts, however, it does broadly argue multiple times that it is entitled to "a declaration that it has no duty to defend or indemnify White Pines in connection with the claims asserted in the Lawsuit" because there is no coverage under the Policy and/or because Policy exclusions apply.  ECF No. 25, at 7 (emphasis added); Penn-America Memo, at 15; ECF No. 44, at 7; Penn-America Supp. Brief, at 6.  Moreover, as discussed above, Penn-America specifically argues that an intentional act does not qualify as an "occurrence."

18

"intentionally misrepresented his employment status as an independent contractor to defraud [] Polli from the protections of the Virginia Workers' Compensation Act," thereby "diverting" him from making a Virginia Workers' Compensation Act claim. Polli Complaint ¶¶ 64-68 (emphasis added).  As discussed above, because an intentional act committed by the insured is not an "occurrence," the actual fraud count is clearly not covered by the Policy.  AES Corp., 283 Va. at 614-18; cf. Town Crier, Inc., 721 F. Supp. at 106 ("There can be no coverage for the fraud claim by virtue of the clause excluding coverage for intentional acts.").   Therefore, the Court finds that Penn-America has "clearly demonstrate[d]" that there is "no basis upon which" Penn-America could be required to indemnify and/or defend White Pines under the Policy for Polli's actual fraud count based on the allegations in the Polli Complaint and the language of the Policy.  Mapp, 461 F. Supp. 2d at 456.[7]

## B. The Assault and Battery Exclusion

Although Penn-America fails to clearly demonstrate that the events at issue—with the exception of the actual fraud count—cannot qualify as an "occurrence" under the Policy, the Policy's coverage is still subject to a number of exclusions.  If Penn-

---

[7] Comparatively, Penn-America has failed to clearly demonstrate that Polli's constructive fraud count could not be an "occurrence" under the Policy because Polli alleges that White Pines perpetrated the constructive fraud either "innocently or negligently."  Polli Complaint ¶¶ 69-73.

America demonstrates that the conditions detailed in these exclusions are met, coverage does not apply.

One such exclusion raised by Penn-America is a Policy Endorsement that excludes liability for "bodily injur[ies]" arising out of a "battery." The Endorsement reads as follows:

> In consideration of the premium change, it is understood and agreed that this insurance does not apply to liability for damages because of "bodily injury", "property damage", "personal and advertising injury", medical expense arising out of an "assault", "battery", or "physical altercation" that occurs in, on, near or away from an insured's premises:
>
> 1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, patrons or other persons in, on, near or away from an insured's premises, or
>
> 2) Whether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition, or
>
> 3) Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, failure to warn of the "assault", "battery" or "physical altercation", including but not limited to, negligent hiring, training and/or supervision, or
>
> 4) Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons or other persons.
>
> **DEFINITIONS:**
> For purposes of this endorsement:

"Assault" means any attempt or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of such injury.

"Battery" means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected. The use of force includes but is not limited to the use of a weapon.

"Physical altercation" means a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute.

The Policy, Assault or Battery General Liability Exclusion. Penn-America argues that this Assault and Battery Exclusion clearly encompasses the "bodily injury" suffered by Polli.

This same exclusion was considered by another Judge of this Court in Downtown Norfolk Entertainment, Inc. v. Penn-America Ins. Co., where a patron shot and injured another patron at a venue insured by Penn-America.  660 F. Supp. 2d 669 (E.D. Va. 2008).  The plaintiff there alleged in two counts that the defendants "were negligent 'in allowing an assault to be committed' against [the plaintiff], in that they failed to warn him of an imminent probability of harm, failed to protect him from that imminent probability of harm, failed to provide adequate security, and failed to comply with certain ordinances of the City of Norfolk regarding security."  Id. at 678.  The Court concluded that these claims fell "squarely within parts

one and three of the assault and battery exclusion, and therefore" were excluded from coverage. Id. A third count alleged that the insured "fail[ed] to provide security sufficient to warn and protect [the victim] from the imminent probability of harm and a reasonably foreseeable danger," which the Court held was "plainly" excluded under part four. Id.

As was the case in Downtown Norfolk Entertainment, here, several claims advanced by Polli plainly fall within the Assault and Battery Exclusion. Polli's Complaint pleads in Counts One through Three that White Pines was negligent for failing to have security guards scheduled at the time of the incident, failing to prevent the Assailants from reentering White Pines as the club lacked any kind of barrier, failing to have a policy in place for contacting the police before a situation escalated into violence, and failing to call the police to the scene on the day of the incident. Id. ¶¶ 45-63. The claims that White Pines failed to schedule security guards, failed to prevent the re-entry of the Assailants, and failed to call the police all fall within part two of the exclusion, as allegedly failing to schedule security guards and call the police are failures to properly supervise, and allegedly failing to have a barrier to prevent reentry is a failure to keep the premises in a safe

condition.[8]   Additionally, failing to have a policy in place to call the police fits within part three of the exclusion as Polli has alleged that the staff was trained not to call the police unless it was an emergency, which would constitute negligent training.   See Downtown Norfolk Entertainment, 660 F. Supp. 2d at 678 (finding that claims alleging negligence for failure to provide adequate security and abide by city regulations regarding security were all excluded under part three).

Polli, for his part, has attempted to frame the issue so that his bodily injury did not arise from the battery; rather, he argues that it arose from his employment, therefore rendering the Assault and Battery Exclusion inapplicable.   Polli Counter Memo, at 10.[9]   Polli's main support for such argument is Butler v. Southern States Co-op, Inc., 270 Va. 459 (2005).   In Butler, the Supreme Court of Virginia addressed whether the sexual

[8] Failing to schedule security guards would also fit within part three of the exclusion as negligent supervision.   See Downtown Norfolk Entertainment, 660 F. Supp. 2d at 678 (finding that claims alleging negligence for failure to provide adequate security and abide by city regulations regarding security were all excluded under part three). Failing to have a barrier to prevent reentry also fits within part four where the insured's negligent conduct contributed to the battery.   See id. (finding that claims alleging negligence for "failing to provide security sufficient to warn and protect [the victim] from the imminent probability of harm and a reasonably foreseeable danger" were excluded under part four).

[9] In Polli's view, Penn-America incorrectly reads the Policy language "arise from" to mean "resulting from," arguing that just because the bodily injury "resulted from" the battery does not mean that it "arose from" the battery.   Instead, Polli argues that it was his status as an employee of White Pines where he was instructed to intervene in violent situations that formed the causal connection to his bodily injuries.

23

assault of an employee could be defined as an injury for workers' compensation purposes where the operative statutory text read "an injury <u>arising out of the employment</u> . . . ." 270 Va. at 463 (quoting Va. Code § 65.2-301) (emphasis added).   In contrast, the Assault and Battery Exclusion in the Policy precludes coverage for expenses "<u>arising out of an 'assault,' 'battery,' or 'physical altercation'</u> . . . ."   The Policy, Assault or Battery General Liability Exclusion (emphasis added). Therefore, the question facing this Court is whether the injury "arose out of a battery," whereas the Court in <u>Butler</u> was deciding whether an injury "arose out of the employment."   These are fundamentally different questions, and this Court agrees with Penn-America that Polli's framing of the argument diverges from the Policy's text.   <u>See</u> <u>Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.</u>, 252 Va. 265, 270-71 (1996) (holding "that the statutory definition contained in the [Virginia Workers' Compensation] Act will not be applied to an insurance policy unless the policy provides by reference to the specific statute that the statutory definition is intended to be applied.").   The bodily injury here arose from Assailant One "landing full force punches on [Polli's] jaw and ribs."   Polli Complaint ¶ 30.   Even though Polli would not have been harmed if he did not perform his job responsibilities as he was

instructed, his injuries still "arose from" the battery, as the exclusion's language mandates.

Therefore, the Court finds that Penn-America has met its burden to "clearly demonstrate" that there is "no basis upon which" it could be required to indemnify and/or defend White Pines under the Policy for Polli's negligence claims based on the allegations in the Polli Complaint, and the language of the Assault and Battery Exclusion. Mapp, 461 F. Supp. 2d at 456.[10]

## C. The Workers' Compensation Exclusion

Penn-America also argues that coverage is excluded for Polli's "bodily injury" under the Policy's Workers' Compensation Exclusion. Penn-America Memo, at 8-10. The Workers' Compensation Exclusion states that the Policy does not apply to "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." The Policy, SECTION I, COVERAGE A – BODILY INJURY

---

[10] Regarding Polli's fraud counts, to the extent that Penn-America broadly argues that the Assault and Battery Exclusion "unequivocally excludes coverage for" all of Polli's claims, it appears that Penn-America may have met its burden to clearly demonstrate that the fraud counts are also excluded under the Assault and Battery Exclusion. Penn-America Memo, at 12. Polli argues that because of White Pines' fraud he was "diverted [] from making a claim for his accident to the [Virginia Workers' Compensation Commission]." Polli Complaint ¶ 72. A necessary part of making a claim for workers' compensation is a "personal injury . . . by accident arising out of and in the course of the employment," Va. Code Ann. § 65.2-300, which Polli alleges occurred when he was battered during the course of his employment, Polli Complaint ¶¶ 15-33. As the result of the alleged fraud was Polli's failure to recover money to compensate him for the physical injuries he suffered from the battery, the exclusion may preclude coverage, because without the battery there is no injury, no claim for workers' compensation, and no claims for fraud.

AND PROPERTY DAMAGE LIABILITY ¶ 2.d.  The Polli Complaint includes a workers' compensation count alleging that Polli is "entitled to recovery for the accident which took place on March 22, 2016 in his workplace under the Virginia Workers' Compensation Act."  Polli Complaint ¶¶ 74-76.

### 1. Workers' Compensation Count

Polli argues in his supplemental brief that his negligence counts and workers' compensation count are alternatively pled, and that he therefore has an avenue to pursue damages regardless of whether he is classified as an "employee" or an "independent contractor."  Polli Supp. Brief, at 3-4.  If Polli is determined to be an employee entitled to workers' compensation damages, Polli acknowledges that such fact would "trigger the [Workers' Compensation] Exclusion," at least with respect to his workers' compensation count.  Id., at 3; see also Polli Counter Memo, at 7.  However, because Polli was allegedly misclassified by White Pines as a non-employee, and such misclassification purportedly prevented him from recovering benefits under the Virginia Workers' Compensation Act, Polli argues that he is at liberty to pursue recovery through his negligence counts.  Polli Counter Memo, at 7-8.  If, in contrast, Polli is determined to be an independent contractor, he would have no basis for a workers' compensation claim, but he could, of course, pursue his

negligence counts without interference from any workers'
compensation law.  Polli Supp. Reply, at 4.

Regardless of his employment classification, or his theory
of relief, Polli's negligence and workers' compensation claims
are not covered under the Policy.  If Polli is found to be an
employee capable of bringing his workers' compensation claim
against his employer, he is specifically excluded from
recovering from Penn-America under the Policy's Workers'
Compensation Exclusion, as he admits.  Or, if he is found to be
an employee, but is not capable of bringing a workers'
compensation claim due to White Pines' failure to comply with
the Virginia Workers' Compensation Act, the workers'
compensation claim cannot proceed, and the "alternative"
negligence counts are, at a minimum, excluded under the Assault
and Battery Exclusion, as was explained above in Part IV.B.[11]

If instead Polli is found to be an independent contractor,
then he would not qualify to pursue a workers' compensation
claim under the Virginia Workers' Compensation Act, and that
count would fail on its face.  See Behrensen v. Whitaker, 392
S.E.2d 508, 509 (Va. Ct. App. 1990) ("One who seeks benefits
under the Workers' Compensation Act must show that he is an

---

[11] While Penn-America argues that the negligence counts are also excluded
under the Workers' Compensation Exclusion because the battery was "within
the scope of [Polli's] employment as a manager," Penn-America Memo, at 8-
10, as these counts are clearly excluded under the Assault and Battery
Exclusion, the Court declines to squarely address this argument.

employee within the definition of [the Act]." (citing <u>Carter v. Hercules Powder Co.</u>, 182 Va. 282, 288 (1944))).   While Polli could pursue his "alternative" negligence counts in such circumstances, his negligence counts would still be precluded under the Assault and Battery Exclusion, as explained above.

Therefore, regardless of whether Polli is determined to be an employee or an independent contractor, Penn-America has "clearly demonstrate[d]" that there is "no basis upon which" Polli can recover on his workers' compensation count based on the allegations of the Polli Complaint and the language of the Workers' Compensation Exclusion.   <u>Mapp</u>, 461 F. Supp. 2d at 456.[12]

## 2. Fraud Counts

Finally, turning again to Polli's fraud counts, to the extent that Penn-America broadly argues that "Polli's claims fall squarely within White Pines' obligations 'under a workers' compensation . . . law'" and therefore are "excluded under the Policy," Penn-America has carried its burden to clearly demonstrate that there is no basis upon which Polli can recover on his two fraud counts based on the allegations of the Polli Complaint and the language of the Workers' Compensation

---

[12] Upon initial review, the Court suspected that Polli's employment "status," considered a mixed question of law and fact in many workers' compensation cases, may be a material dispute that could only be resolved by the trier of fact.   However, after further investigation, the Court finds that Polli's employment status, even if it turns on disputed facts, is not "material" to the resolution of the pending motions as the Policy excludes coverage regardless of Polli's status.

Exclusion. Penn-America Memo, at 10. Notably, Polli's fraud counts are grounded in the contention that White Pines, either intentionally or innocently/negligently, avoided its obligation under the Virginia Workers' Compensation Act to properly classify him as an employee. Polli Complaint ¶¶ 69-76. Such claims fall squarely within the Workers' Compensation Exclusion which states that the Policy does not cover "[a]ny obligation of the insured under a workers' compensation . . . law . . . ." The Policy, SECTION I, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY ¶ 2.d. Because the fraud counts allege a failure of White Pines to comply with its obligations under workers' compensation laws, Penn-America owes no duty to indemnify and/or defend White Pines as to such counts.[13]

### D. The "Expected or Intended Injury" and the "Employer's Liability" Exclusions

In light of the Court's determination that Penn-America has met its burden to demonstrate that coverage for all counts is excluded under the Policy, the "Expected or Intended Injury" and "Employer's Liability" Exclusions need not be squarely considered at this time. The Policy, SECTION I, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY ¶¶ 1.a-b, 2.e.

---

[13] The fraud counts necessarily rely on Polli's status as an employee, and like the workers' compensation count, were Polli to be classified as an independent contractor, the fraud claims would fail as a matter of law.

29

### V. CONCLUSION

For the reasons detailed above, Penn-America's motion for judgment on the pleadings is **GRANTED**, ECF No. 37, and Polli's counter-motion for judgment on the pleadings is **DENIED**, ECF No. 39. Penn-America owes no duty to defend and/or indemnify White Pines on the claims asserted by Polli in the Polli Complaint because the claims either do not fall within the insurance coverage, or coverage is excluded under the Policy's Assault and Battery Exclusion and/or the Workers' Compensation Exclusion.[14]

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____
/s/
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August ___5___, 2020

---

[14] The Court notes again for the record that White Pines has never made an appearance in this matter, and while this case was defended solely by Polli, the Court's ruling is binding as to White Pines, whether by virtue of the entry of default, ECF No. 8, or the granting of Penn-America's motion, ECF No. 37.